UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COREY LASHLEY,

                              Plaintiff,

                                                    DECISION AND ORDER

                                                    02-CV-6393L

                 v.

CORRECTIONAL OFFICER M. WAKEFIELD,
et al.,

                              Defendants.
_____

## INTRODUCTION

        Plaintiff, Corey Lasley, an inmate in the custody of the New York State Department of

Correctional Services ("DOCS"), commenced this action *pro se* pursuant to 42 U.S.C. § 1983

claiming that defendants, five DOCS employees, violated his First, Eighth, and Fourteenth

Amendment rights.  Plaintiff alleges that defendants filed false misbehavior reports against him and

conducted repeated retaliatory searches of his cell in order to stop him from filing grievances and

doing legal work in the law library.

Defendants have moved for summary judgment. (Dkt. #26).[1]  For the reasons set forth below, defendants' motion is granted, in part, and denied, in part.


## BACKGROUND

The following facts are construed in a light most favorable to plaintiff.  At all relevant times, plaintiff was housed at Five Points Correctional Facility, a maximum security prison.

*Incidents involving C.O. Wakefield, Sgt. Piccolo, Lt. Sarra, and Dep. Superintendent Aidala*

In October 2001, plaintiff worked as clerk assisting other inmates with legal research and writing in the library at Five Points.  On October 8, defendant Correctional Officer Marlene Wakefield informed the law clerks working in the library that day of an alleged new policy that limited clerks to five minutes with each inmate that they were assisting.  Plaintiff, who claimed familiarity with the regulations, questioned Wakefield as to the basis for the new policy.  Wakefield responded that the director for libraries in Albany had issued the policy.  She told plaintiff to file a grievance if he was not happy with her directive.

Plaintiff immediately began preparing such a written grievance to the Superintendent claiming that Wakefield did not give him sufficient time to render proper legal assistance to inmates. (Grievance "FPT 3504-01," at Dkt. #26, Ex. 2, Dep. Ex. 6).  Wakefield apparently saw plaintiff

---

[1]  Plaintiff did not file a response in opposition to defendants' motion, although the Court granted him three extensions of time in which to do so.  (*See* Dkts. ##35, 36, 37).  Defendants' motion, then, is unopposed.  Nevertheless, I have reviewed the record, including plaintiff's verified complaint, sworn deposition testimony, and the exhibits.  *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist….).

writing the grievance and called defendant Sgt. Paul Piccolo to the library for assistance. Plaintiff was searched and property was taken from him. Sgt. Piccolo allegedly said to plaintiff, "What are you crazy writing one of my officers up, now your (sic) gonna pay and then maybe it'll stop those other assholes from writing my officers up."(Dkt. #1, ¶28).

Wakefield wrote an inmate misbehavior report against plaintiff charging him with four rules violations: possession of contraband, harassment, refusing a direct order, and unauthorized legal work. (Dep. Ex. 8). Plaintiff was placed on keeplock confinement beginning that day.[2] Two days later, on October 10, 2001, plaintiff filed a second grievance, this time alleging retaliation by Wakefield and Piccolo. (Grievance "FPT 3471-01," at Dep. Ex. 5). Plaintiff's cell was then searched on October 10 and 14. Plaintiff claims that his cell was ransacked and some of his property was destroyed.

After a disciplinary hearing on October 16, 2001, plaintiff was found not guilty of all the October 8 charges. The hearing officer found that the "evidence [did] not support misbehavior report." Plaintiff was released from keeplock confinement that same day. (Dep. Ex. 8). On October 18, 2001, the Superintendent denied Grievance FPT 3471-01, in which plaintiff accused Wakefield and Sgt. Piccolo of retaliation. (Dep. Ex. 5).

However, on October 24, the Inmate Grievance Review Committee ("IGRC") responded to plaintiff's first grievance, FPT 3504-01, and agreed with him that the law clerk Directive did not contain a time limit on how long a law clerk could meet with an inmate. On October 30, the

---

[2] Keeplock confinement is more restrictive than general population confinement. The inmate is confined to his cell for 23 hours a day, with one hour spent outside the cell for exercise. Inmates also lose certain privileges during keeplock confinement. 7 N.Y.C.R.R. §§ 301.1-301.6.

Superintendent "accepted" this grievance and found that "law clerks should be provided ample opportunity to provide assistance to other inmates with their legal work in accordance with the Directive." (Dep. Ex. 6). Plaintiff's cell was searched four days later on November 3, 2001.

On November 5, 2001, plaintiff wrote a letter complaint to the Law Library Supervisor complaining that another unnamed correctional officer and Sgt. Piccolo again tried to enforce a time limit on how long he could meet with inmates. Plaintiff gave the officer a copy of the decision on his last grievance and the Directive pertaining to law clerks. The officer called Sgt. Piccolo to the library. Plaintiff claims that Sgt. Piccolo harassed him for giving the officer a copy of the decision and that, in fact, Sgt. Piccolo had instructed the officer to enforce the time limit. Plaintiff received no response to this complaint, despite sending follow-up letters to the Superintendent and the Law Library Supervisor. (Dep. Ex. 10).

Sometime in November 2001, plaintiff also informed Inmate Grievance Supervisor Hendricks and defendant Lt. Gregory Sarra that he intended to run in the upcoming election to become an IGRC representative. Plaintiff was dissatisfied with the manner in which the IGRC at Five Points was handling certain grievances. He voiced his complaints to members of the IGRC and other correctional staff.

On November 20, 2001, Lt. Sarra filed an inmate misbehavior report against plaintiff charging him with creating a disturbance and threatening an inmate member of the IGRC ("the November 20 charges"). These incidents allegedly took place on November 18 and 20 in the law library. Lt. Sarra based the misbehavior report on information received through confidential informants.(Dep. Ex. 11).Plaintiff was confined to his cell on keeplock confinement pending a

disciplinary hearing.  On December 5, plaintiff was found not guilty after a hearing of the November 20 charges. The hearing officer found that there was no evidence that the inmate who plaintiff allegedly threatened was present in the law library at the time of the alleged incident. (Dep. Ex. 11).

On December 5, plaintiff wrote a grievance against Lt. Sarra claiming that the misbehavior report was written in retaliation for plaintiff's complaints against the IGRC representatives that they were not processing grievances correctly. (Dep. Ex. 12).  Plaintiff filed a second grievance on December 5 complaining that the October 10, October 14, and November 3, 2001 cell searches were retaliatory and based on the grievances he had filed regarding the library policies, as well as his acquittal of the October 8 charges.  Plaintiff also grieved the fact that he did not receive a response from the law library administrator concerning his November 5 complaint against Sgt. Piccolo for enforcing a time limit on law clerk/inmate meetings. (Grievance "FPT 3820-01," Dep. Ex. 7).

In addition to naming Sgt. Piccolo in the grievance, plaintiff also named defendant Dep. Superintendent Dana Aidala because Aidala authorized the three cell searches.  According to Dep. Superintendent Aidala, plaintiff's cell was searched on these dates based on a computer program that randomly identified cells to search.  (Aidala Aff., Dkt. #32).  Grievance FPT 3820-01 was denied on January 6, 2002. (Dep. Ex. 7).

On December 4, 2001, Sgt. Piccolo ordered another search of plaintiff's cell in order to look for "law library material." A law library book was found in plaintiff's cell.  The officer who searched the cell (who is not a party to this lawsuit) wrote a misbehavior report against plaintiff charging him with possession of stolen state property and contraband. According the misbehavior report, Sgt. Piccolo "deemed" the book "stolen property" and "contraband." (Dkt. #26, Dep. Ex. 13).

On December 5, plaintiff wrote a grievance against Sgt. Piccolo claiming that the December 4 cell search was retaliatory. (Dep. Ex.12). On December 14, the hearing officer found plaintiff not guilty of the charges based on the fact that plaintiff had permission to sign the law book out of the library.[3] A week later, on December 21, 2001, plaintiff's cell was searched again.  It was searched again on February 12 and 15, 2002.

*Incidents with C.O. Levac*

On February 20, 2002, while plaintiff was on his way to the law library, defendant Correctional Officer T. Levac stopped him, searched his legal file, and then sent him on his way. When plaintiff returned from library, C.O. Levac stopped plaintiff again and, this time, searched plaintiff himself, his personal property, his wallet, and his legal file.  Plaintiff alleges C.O. Levac searched him in retaliation for doing his own and other inmates' legal work. He alleges C.O. Levac made retaliatory comments to him during the search. C.O. Levac then confiscated some of plaintiff's personal and legal papers.  Plaintiff repeatedly asked C.O. Levac for his papers back, to no avail. Ten minutes later, as plaintiff was on his way to recreation, he passed by C.O. Levac and they got into a dispute about whether plaintiff was entitled to the return of his property. Plaintiff requested to be placed in the special housing unit so that he could make a record of the incident with C.O. Levac.  That night, plaintiff's cell was searched.

On February 21, 2002, C.O. Levac wrote an inmate misbehavior report against plaintiff charging him with five violations, including creating a disturbance, refusing a direct order, threats, being out of place, and conducting unauthorized legal work. On February 28, 2002, plaintiff was

---

[3]  The record is not clear whether plaintiff was kept on keeplock confinement from December 4 through the 14 during the pendency of the disciplinary hearing.

found not guilty of three of the charges (being out of place, creating a disturbance, and unauthorized legal work) and guilty of two of the charges (refusing a direct order and threats).  He was sentenced to thirty additional days keeplock confinement and loss of privileges. (Dep. Ex. 17).  As a result of this finding, plaintiff lost his law clerk job. (Dep. 141).

Plaintiff's cell was searched again on February 27, and March 19, 2002.  Plaintiff filed a grievance regarding the cell searches.  Plaintiff received a written response from Dep. Superintendent Aidala that his complaint would be addressed by the IGRC, but that never occurred.  (Dep. Ex. 20).

On March 22, 2002, plaintiff was scheduled to see the facility dentist.  C.O. Levac was in charge of the area where the dental appointments were scheduled.  Plaintiff claims that, without provocation, C.O. Levac refused to let him see the dentist and ordered that he be escorted back to his cell.  Plaintiff filed a grievance against C.O. Levac for this conduct.  (Dep. Ex. 4).  The grievance was denied.  Plaintiff's cell was searched again on April 25, 2002.

## DISCUSSION

### I.  Summary Judgment Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986). The Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000)(internal quotations omitted). Where, as here, the plaintiff is proceeding *pro se*, the court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999)(internal quotations omitted).

## II. Retaliation

For his first claim, plaintiff alleges that defendants C.O. Wakefield, Sgt. Piccolo, Lt. Sarra, C.O. Levac, and Dep. Superintendent Aidala retaliated against him by filing false misbehavior reports, ordering cell searches, and constantly harassing him, all in an effort to stop him from seeking redress of grievances and working as a law clerk.

In order to prevail on a claim of retaliation, plaintiff bears the burden of showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.2003)(internal quotations omitted); *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir.2002). Assuming that plaintiff can satisfy the three elements, defendants may escape liability if they demonstrate that they would have taken the same adverse action "'even in the absence of the protected conduct.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)(quoting *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

Viewing the evidence in the light most favorable to plaintiff, I find that a genuine issue of material fact exists as to whether the actions of defendants C.O. Wakefield, Sgt. Piccolo, and Lt.

Sarra were taken in retaliation for protected activity. The retaliation claims against C.O. Levac and Dep. Superintendent Aidala, however, should be dismissed.

### A.    C.O. Wakefield, Sgt. Piccolo, and Lt. Sarra

Defendants do not dispute that filing grievances is considered protected activity.[4]    The Second Circuit recognizes that "a prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances." *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir.1995). At issue, then, is whether plaintiff suffered any adverse action or can prove the requisite causal connection between that action and the protected activity.

Courts have found that prison officials' conduct constitutes an "adverse action" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir.2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003) (the alleged retaliation must be more than *de minimis*).    Plaintiff alleges that defendants repeatedly filed false disciplinary charges against him, resulting in keeplock confinement

---

[4]    Relying on *Shaw v. Murphy*, 532 U.S. 223, 231 (2001), defendants argue that acting as an inmate law clerk and assisting other inmates in petitioning for the redress of their grievances is not a constitutionally protected activity under the First Amendment. Because I find that filing grievances or complaints with prison officials is constitutionally protected activity, I need not decide this question.  I note, however, that courts in this Circuit have not read *Shaw* as broadly as the defendants. *See Gill v. Riddick*, No. 03-CV-1456, 2005 WL 755745 (N.D.N.Y. Mar. 31, 2005); *Auleta v. LaFrance*, 233 F.Supp.2d 396 (N.D.N.Y.2002).  In addition, other courts continue to recognize that an inmate has the right to be protected from retaliation for activities that arguably are similar to those at issue here (such as acting as an IGRC representative), based on the well-recognized protections afforded to those petitioning for the redress of grievances. *See Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, *4 (N.D.N.Y.  Oct. 7, 2003); *McCorkle v. Juchenwicz*, No. 94 Civ. 6363, 1999 WL 163205,*1 (S.D.N.Y. Mar. 23, 1999).

and loss of privileges. I find that a question of fact exists as to whether a person similarly situated would have had their First Amendment rights deterred under these circumstances.

Defendants argue that because plaintiff continued to file grievances and complaints despite their actions, and because he admitted at his deposition that he was not actually deterred (*see* Pl. Dep. at 144), his retaliation claims must be dismissed.  "The test, however, is not whether plaintiff … himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by defendants to argue that the plaintiff was not chilled) …." *Walker v. Pataro*, No. 99 Civ. 4607, 2002 WL 664040,*9 (S.D.N.Y. Apr. 23, 2002).  The test, as set forth in *Dawes* and *Davis*, is whether a similarly situated person of "ordinary firmness" would have been deterred from filing grievances or complaints. I cannot hold as a matter of law that a similarly situated inmate would not have been deterred. *See Gill v. Tuttle*, 2004 WL 605281, *3 (2d Cir. Mar. 29, 2004) (reversing district court decision granting summary judgment on a retaliation claim because plaintiff was not himself deterred by defendants' conduct and holding that "there is a genuine, material question of fact as to whether a similarly situated person of ordinary firmness" would have been deterred).

Defendants further maintain that, because he was found not guilty of the charges in three of the four inmate misbehavior reports, plaintiff suffered no harm at all or any adverse action. I disagree. The record shows that plaintiff spent at least twenty days in keeplock confinement (and perhaps more depending on whether he was confined on the December 4, 2001 report), with concomitant loss of privileges, during the pendency of the three disciplinary hearings that resulted in 'not guilty' findings. Courts have found that keeplock confinement for similar periods of time

were sufficient adverse actions to support a retaliation claim. *See Gill v. Hoadley*, 261 F.Supp.2d 113, 123-24 (N.D.N.Y.2003) (keeplock confinements of four days and twenty-one days); *Baskerville v. Blot*, 224 F.Supp.2d 723, 733 (S.D.N.Y. 2002)(twenty days keeplock confinement); *see also Gill v. Tuttle*, 2004 WL 605281, at *3 (reversing district court finding, as a matter of law, that nine days keeplock confinement constituted *de minimis* impact of alleged retaliation).

Defendants also argue that plaintiff cannot show that a causal connection exists between the protected activity and their conduct. Evidence that can lead to an inference of a causal connection or retaliatory motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir.1995). Applying these principles, the Second Circuit has held that "testimony that [a defendant] made retaliatory threats, together with evidence of the sequence of events" could permit a trier of fact to infer that there was retaliation. *Jones*, 45 F.3d at 680.

In the case at bar, I find that circumstantial evidence exists to raise a question of fact regarding whether retaliation was a substantial factor in the conduct of C.O. Wakefield, Sgt. Piccolo, and Lt. Sarra. Plaintiff alleges that Sgt. Piccolo made retaliatory statements to him. (Dkt. #1, ¶28). *Gayle*, 313 F.3d at 684. Further, there is a close temporal proximity between plaintiff's protected activities and the misbehavior reports, in some instances only a matter of a few days. *Colon*, 58 F.3d at 872.

In addition, plaintiff was found not guilty of charges contained in the misbehavior reports filed by C.O. Wakefield, Lt. Sarra, and the report for which Sgt. Piccolo was responsible. Vindication of the inmate after a hearing may constitute circumstantial evidence of defendant's retaliatory motive.  *See Gayle*, 313 F.3d at 683 ("A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation."); *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir.2003) (summary judgment on retaliation claim was inappropriate where "essentially all relevant adverse actions by DOCS officials were subsequently found to have been unjustified … not on procedural or technical grounds but because, on review, they were found to have been devoid of factual support."). This is particularly so here, where the hearing officers explicitly found that there was insufficient evidence to support the charges against plaintiff.

For this same reason, I find that defendants Wakefield, Piccolo, and Sarra have not satisfied their burden of showing that they would have taken the same adverse actions even in the absence of plaintiff's protected activities.  *See Graham*, 89 F.3d at 79.  This is not a case in which plaintiff admits to the conduct underlying the misbehavior reports and the sole issue is defendants' motivation. *Cf. Hynes v. Squillance*, 143 F.3d 653, 657 (2d Cir.1998) (defendants met their burden of proof that they would have disciplined plaintiff to the same extent where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct.").

Rather, there was insufficient evidence that plaintiff engaged in the charged conduct. A question of fact exists, therefore, as to whether C.O. Wakefield would have brought the October 8 charges against plaintiff had he not written a grievance against Wakefield regarding the alleged time limit policy for law clerks (which grievance was later accepted by the Superintendent).  Although

C.O. Wakefield denies in a short, conclusory affidavit that she did not file the misbehavior report in retaliation for any conduct by plaintiff (Dkt. #29), that is not an issue that the Court can decide in the context of a summary judgment motion. The same reasoning applies concerning the claims against Sgt. Piccolo and Lt. Sarra. Both deny in conclusory fashion that they engaged in any retaliation.   Importantly, however, neither deny having knowledge of the plaintiff's protected activities. *Bennett*, 343 F.3d at 139 ("DOCS offered only a conclusory denial of these allegations, failing to submit affidavits or any other admissible evidence concerning what [facility] officials did or did not know.").

Plaintiff's claims against these defendants ultimately will be decided based on the credibility of the witnesses and the weight of the evidence.  These issues are within the province of the jury, and not for the Court to decide on summary judgment. *Graham*, 89 F.3d at 81 (plaintiff's "punishment was either wholly retaliatory or it was not retaliatory at all … This question runs to matters of credibility and weight of the evidence, which are matters for the jury …."); *Colon*, 58 F.3d at 872 (summary judgment inappropriate where there was evidence of admission of retaliatory motive by defendants and circumstantial evidence based on temporal proximity between grievance and retaliation); *Jones*, 45 F.3d at 680 ("determinations as to whether to credit such testimony and as to what inference to draw from the sequence of events is within the province of the factfinder at trial [on the retaliation claims], not of the court on a motion for summary judgment.").

### B.    C.O. Levac

The retaliation claim against C.O. Levac, however, should be dismissed.  Plaintiff alleges that C.O. Levac filed the February 21, 2002 misbehavior report against him and prevented him from

seeing the facility dentist on March 22, 2002, in retaliation for plaintiff working as a law clerk.[5]

Assuming, without deciding, that plaintiff could show that working as a law clerk was a protected

activity, *see* fn.3, *supra*, I find that there is insufficient evidence to survive summary judgment that

a causal connection exists between that activity and C.O. Levac's conduct.

      The only evidence that Levac had a retaliatory motive is the statement plaintiff alleges that

he made during the search.  Plaintiff claims that Levac said that plaintiff was the "asshole" that

worked in the law library and who had given him a "hard time" during a library shift he worked a

few weeks earlier. (Pl. Dep. 107).  This statement alone cannot support a finding that Levac filed the

February 21, 2002, inmate misbehavior report in retaliation for plaintiff's work as a law clerk.

      During his deposition, plaintiff described the earlier encounter with Levac in the library.

Plaintiff allegedly told Levac, who normally did not work in the library, what to do concerning a

glass partition between the law library and the regular library.  (Pl. Dep. 107-108, 115-16).  Levac's

statement to plaintiff during the search that he was the inmate who had given him a "hard time,"

therefore, may be evidence that Levac retaliated against plaintiff for telling him how to do his job.

But plaintiff's conduct in this regard is not protected activity under the First Amendment.  Moreover,

when put into context, the statement does not concern plaintiff's job as a law clerk at all, and is not

evidence that Levac retaliated against plaintiff because he held that particular job.

      In any event, even if the statement could be proof that Levac retaliated against plaintiff, there

is no other evidence, circumstantial or otherwise, to support a retaliation claim against Levac. Unlike

---

     [5] Plaintiff cannot base his retaliation claim against C.O. Levac on his March 29, 2002, grievance he filed against Levac because that grievance was filed *after* Levac issued the February 21 misbehavior report.

the misbehavior reports filed by Wakefield and Sarra, plaintiff was not vindicated after a hearing of

all the charges filed by Levac. After reviewing a videotape of the incident and hearing the testimony

of several witnesses, the hearing officer found plaintiff guilty of refusing a direct order and threats,

and sentenced him to thirty more days of keeplock confinement. This finding was upheld on appeal.

(Dep. Ex. 17).

Although plaintiff was found not guilty of three of the charges in the report, that does not

change the result. Even assuming Levac filed those three charges as retaliation, plaintiff still would

have received the keeplock confinement as a result of the other two disciplinary convictions. Thus,

C.O. Levac has shown that plaintiff would have received the same discipline even in the absence of

any alleged retaliatory motive. *Hynes*, 143 F.3d at 657 (quoting *Graham*, 89 F.3d at 81) ("even

assuming retaliatory motive, the defendants would be entitled to summary judgment 'if there were

proper, non-retaliatory reasons for [plaintiff's] punishment.'"); *accord Lowrance v. Achtyl*, 20 F.3d

529, 535 (2d Cir.1994) ("the conclusion that the state action would have been taken in the absence

of improper motives is readily drawn in the context of prison administration where we have been

cautioned to recognize that prison officials have broad administrative and discretionary authority

over the institutions they manage.")(internal quotations and citations omitted). Therefore, C.O.

Levac is entitled to summary judgment.

### C.    Dep. Superintendent Aidala

Plaintiff alleges that Dep. Superintendent Aidala retaliated against him by ordering cell

searches because plaintiff filed grievances and complaints against other correctional officers and

worked as a law clerk. This claim must be dismissed. The Supreme Court has ruled that inmates

have no constitutional protection from cell searches, even those conducted for retaliatory reasons. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Walker v. Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, *9 (S.D.N.Y. Oct. 17, 2001); *Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, *6 (N.D.N.Y. Jun. 29, 2000); *Higgins v. Coombe*, No. 95 Civ. 8696, 1997 WL 328623, *7 (S.D.N.Y. Jun. 16, 1997). It is well-settled, then, that plaintiff cannot base a retaliation claim against defendant Aidala based solely on cell searches and summary judgment is warranted. *Salahuddin v. Mead*, No. 95 Civ. 8581, 2002 WL 1968329, *5 (S.D.N.Y. Aug. 26, 2002) (dismissing First Amendment retaliation claim based on cell searches and finding that plaintiff suffered no adverse action).

## III.  Cruel and Unusual Punishment

Plaintiff's third claim alleges that defendants Dep. Superintendent Aidala and Sgt. Piccolo violated his Eighth and Fourteenth Amendment rights by ordering searches of plaintiff's cell solely to harass him.[6] Although prisoners have no constitutional protection from cell searches conducted for retaliatory reasons, they do enjoy Eighth Amendment protection from searches that lack any legitimate penological interest and are intended solely to harass. *Nilsson v. Coughlin*, No. 86 Civ. 7135, 1987 WL 12823, *4 (S.D.N.Y. Jun. 18, 1987) ("a prisoner maintains the right under the Eighth Amendment to be free from searches which are unrelated to prison needs, but rather calculated to harass."); *Moncrieffe*, 2000 WL 949457, at *6 (same).

---

[6] Even though plaintiff uses the word "retaliatory" and not "harassment" in the third claim, he does cite the Eighth Amendment as the source of the right that protects him from the searches as they were conducted, and he characterizes them as cruel and unusual punishment. In light of his *pro se* status, then, I construe his third claim as an Eighth Amendment claim against Aidala and Piccolo for cruel and unusual punishment by way of harassment through repeated cell searches that lacked any penological interest.

- 16 -

As evidence of the harassment, plaintiff relies on the number of searches conducted – at least eleven searches between October 10, 2001 and April 25, 2002 – and the fact that they occurred soon after protected activities or confrontations with DOCS employees.  He also relies on the fact that all the searches allegedly were conducted in a manner inconsistent with DOCS's directives because his cell was ransacked and some of his belongings damaged.  Moreover, he claims that during his incarceration, he has never been found to be in possession of contraband or weapons.  Nevertheless, his cell continued to be searched.  Finally, as further evidence that the searches were meant to harass him, he relies on the fact that he never received a response to the numerous grievances he filed complaining about them. (Dep. Exs. 14, 19, 20, and 21).

In support of his motion for summary judgment, Dep. Superintendent Aidala filed an affidavit stating that, at a maximum security prison like Five Points, cell searches are conducted approximately one to two times a month on a particular cell, as randomly dictated by a computer program.  The searches are done in an effort to maintain discipline and security, and to search for weapons and contraband.  Aidala authorized the searches on plaintiff's cell on October 10 and 14, November 3, December 29, February 15 and 27, and March 19.  According to Aidala, these searches were conducted as directed by the random computer program. (Dkt. #32, ¶¶5-12).

I find that Aidala has met his burden of proving that there was a legitimate penological reason for searching plaintiff's cell on these occasions.  By failing to respond to the motion, plaintiff has left Aidala's statements uncontested.  Further, there is insufficient evidence in the record to raise an issue of fact regarding whether the searches authorized by Aidala were conducted solely to harass plaintiff.  The number of searches during the five or six month time period is not excessive, in light

of the policy at Five Points that cells are searched once or twice a month. Moreover, in order to

prevail on an Eighth Amendment claim, plaintiff would have to show that Aidala ordered the

searches with the specific intent to cause plaintiff harm and that the searches, in fact, caused him

harm. *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992). The record lacks any evidence to make that

showing.  Therefore, Aidala is entitled to summary judgment. *See Salahuddin*, 2002 WL 1968329,

at *5-*6; *Walker*, 2001 WL 1160588, at *8; *Troy v. Kuhlmann*, No. 96 Civ. 7190, 1999 WL 825622

(S.D.N.Y. Oct. 15, 1999).

Sgt. Piccolo, as the area supervisor, specifically authorized the search of plaintiff's cell on

December 4, 2001, and February 12, 2002.  I find that a question of fact exists regarding whether the

December 4, 2001 cell search was done solely to harass plaintiff.  In an affidavit, Sgt. Piccolo

explains that he was informed by a corrections officer that plaintiff had law library books in his cell

without authorization.  He states that after he investigated, he learned that plaintiff did not have the

book signed out.  Therefore, he ordered that his cell be searched.  Sgt. Piccolo deemed the book

found during the search "contraband" and "stolen property" and an inmate misbehavior report was

issued charging plaintiff with two rules violations. (Dkt. #30).  Yet, Sgt. Piccolo fails to explain why

plaintiff was later exonerated after a disciplinary hearing on both charges.  The hearing officer found,

based on documentary proof, that plaintiff signed out the book on November 22.  Therefore, there

is some evidence in the record to call into question Sgt. Piccolo's motivation for ordering the search.

There is no question, though, as to whether plaintiff suffered actual harm as a result of Sgt.

Piccolo's conduct.  There is no evidence that plaintiff suffered any harm from the February 12, 2002

search. As to the December 4 search, the record is not clear as to whether plaintiff was kept in

keeplock confinement for ten days during the pendency of the charges that arose from it. Nevertheless, even assuming he was, a typical ten-day keeplock confinement is not the type of "extreme deprivation" protected by the Eighth Amendment. *See Hudson*, 530 U.S. at 9 (only those deprivations that deny the "minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim.")(internal quotations omitted); *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir.2000)("To prevail on a claim based on the conditions of his confinement, a prisoner must show extreme deprivations, because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society")(internal quotations and citations omitted). Therefore, Sgt. Piccolo is entitled to summary judgment as well.

## IV.  Deliberate Indifference

Plaintiff's fifth claim alleges that defendants Dep. Superintendent Aidala and Sgt. Piccolo, after learning of the constitutional violations of plaintiff's rights through reports and continuing to order retaliatory cell searches, exercised "deliberate indifference" to his constitutional rights.  For the reasons articulated in part III, *supra*, this claim is also dismissed.

## V.  Discrimination

Plaintiff's second claim alleges that defendants "knowingly and willingly den[ied] the plaintiff the Equal Protection of Law, by way of discrimination, retaliation, and conspiracy." Construed broadly, plaintiff alleges that defendants violated 42 U.S.C. §§ 1981, 1985(3) and 1986.

At his deposition, plaintiff alleged that defendants denied him equal protection of the laws because he was African-American and a Muslim. He admitted, however, that no defendant had ever said anything to him about his race or religion.  (Dep. 145).  There is no evidence in the record that defendants held a discriminatory or class-based animus towards plaintiff. Summary judgment, therefore, on plaintiff's §§ 1981 and 1985(3) claims is warranted. *See Graham*, 89 F.3d at 81-82; *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995)("To prove an equal protection violation, claimants must prove purposeful discrimination … directed at an identifiable or suspect class.") (internal citations omitted); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir.1986). Likewise, because his § 1985 claim fails, so too does his claim brought pursuant to § 1986 for conspiracy.  *Graham*, 89 F.3d at 82 ("Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985.  Hence, a § 1986 claim is contingent a valid § 1985 claim.").  Therefore, defendants are entitled to summary judgment on plaintiff's second claim.

## VI.  Conspiracy

Plaintiff's fourth claim alleges that defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1983.  Because the only claims that remain are the retaliation claims against defendants Wakefield, Sgt. Piccolo, and Lt. Sarra, the Court's inquiry is limited to whether plaintiff has raised an issue of fact that these three defendants conspired to retaliate against him.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors … ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Plaintiff offers only conclusory allegations that defendants acted in concert with each other to deprive him of his First Amendment rights. There is no evidence in the record to support that claim. Therefore, summary judgment is warranted. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir.2002)("conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #26) is granted, in part, and denied, in part as follows:

- Plaintiff's second (discrimination), third (cruel and unusual punishment), fourth (conspiracy), and fifth (deliberate indifference) claims are dismissed with prejudice;

- Defendants' motion for summary judgment as to the first claim alleging retaliation against defendants T. Levac and Dep. Superintendent Aidala is granted, and it is dismissed with prejudice;

- Defendants' motion for summary judgment as to the first claim alleging retaliation against defendants C.O. Wakefield, Sgt. Piccolo, and Lt. Sarra is denied, and plaintiff may proceed to trial on this claim only against these defendants.

The Clerk of the Court is directed to terminate defendants T.Levac and D.G. Aidala.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 2, 2005.